UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COURTNEY GREEN,<br><br>        Plaintiff,<br>  v.<br><br>LIEUTENANT TAVERNIER and<br>CORRECTION OFFICER TUGGLE,<br><br>        Defendants. | CASE NO. 3:18-cv-1781 (CSH)<br><br><br><br>MAY 7, 2019 |

# INITAL REVIEW ORDER

**HAIGHT, Senior District Judge**:

The plaintiff, Courtney Green, currently incarcerated at Osborn Correctional Institution in Somers, Connecticut, has filed a complaint *pro se* pursuant 42 U.S.C. § 1983. He names as defendants Lieutenant Tavernier and Correctional Officer Tuggle. Green contends that defendant Tavernier retaliated against him in violation of the First Amendment and subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment. He alleges that both defendants subjected him to unreasonable searches in violation of the Fourth Amendment. Green seeks damages from the defendants in their individual capacities.

I. **Factual Allegations**

The factual allegations contained in Plaintiff's complaint are recounted below, recited in the light most favorable to Plaintiff.

On June 26, 2018, Green underwent a surgical procedure for a chronic anal fissure. Doc. 1 ("Compl.") ¶ 1. Before discharging him, the surgeon ordered that Green be issued a pass to

have a pillow to sit on when he returned to the correctional facility. *Id.* ¶ 2. The facility doctor issued Green a pass permitting him to sit on a pillow for thirty days. *Id.* ¶¶ 2-3.

From June 27, 2018, through July 1, 2018, defendant Tavernier refused to honor the pillow pass and denied Green access to the dining hall with his pillow. *Id.* ¶ 3. Although she verified the pass with the medical department, defendant Tavernier would not permit Green to enter the dining hall with his pillow and refused permission for Green to receive his meals in his cell—even after Green informed her that the pillow was a standard, state-issued pillow and allowed Tavernier to inspect the pillow for contraband. *Id.* ¶ 4. On June 27, 2018, defendant Tavernier told Green that he would receive a disciplinary charge if he returned to the dining hall with the pillow. *Id.* ¶ 6. Green would not enter the dining hall without his pillow because he viewed sitting on a hard surface as unreasonable in light of his recent surgery and issuance of the pass. *Id.* Green was not able to enter the dining hall to eat from June 27, 2018 through July 1, 2018. *Id.* The lack of his therapeutic high fiber diet caused Green to experience severe constipation, rectal pain and rectal bleeding, along with fatigue from not eating for five days. *Id.* ¶ 7.

On July 2, 2018, Green saw Deputy Warden Snyder and told him that defendant Tavernier was denying him access to the dining hall. *Id.* ¶ 8. He showed Deputy Warden Snyder the pillow pass. *Id.* Deputy Warden Snyder told Green that he would look into the matter. *Id.* ¶ 9. A few hours later, Green was called to the medical unit and issued a pass to receive his meals in his cell. *Id.* Green filed a grievance against defendant Tavernier which was denied initially and on appeal. *Id.* ¶ 11. After Green filed the grievance, he ran into Tavernier in a hallway, and she glared harshly at him. *Id.*

2

On August 18, 2018, defendant Tavernier entered Green's cell with unit officer Iyare. *Id.* ¶ 13. Defendant Tavernier accused Green of telling Iyare that he discarded a shaving razor in the trash. *Id.* Green denied the accusation. *Id.* Defendant Tavernier then ordered Green to accompany her to the medical unit. *Id.* ¶ 14. En route, Green commented that defendant Tavernier did not believe that he had a razor blade because he was not searched in his cell and the housing unit was operating normally. *Id.* ¶ 15.

In the medical unit, defendant Tavernier ordered defendant Tuggle to strip search Green in the bathroom. *Id.* ¶ 16. Defendant Tuggle did not close the bathroom door. *Id.* Green asked that the door be closed partially because he would be in full view of any nurses that might leave their adjacent office during the search. *Id.* Defendant Tuggle denied the request and ordered Green to remove his clothes. *Id.* ¶ 17. While Green was naked, two nurses left their office. *Id.* They saw him and laughed while they walked to the treatment room. *Id.* Defendant Tuggle did not find a razor blade during the search. *Id.* ¶ 18.

Following the strip search, Green was sent to the medical unit holding cell while his cell was searched. *Id.* While Green waited, defendant Tavernier went to contact Officer Spence, the officer who distributed the razors in the housing unit. *Id.* ¶ 19. After approximately forty minutes, Green was ordered to return to his cell. *Id.* ¶ 20. While escorting him to his cell, defendant Tavernier told Green that Officer Spence denied reporting any missing razors. *Id.* ¶ 21-22. Defendant Tavernier began insulting Green. *Id.* In response, he stated that she was upset because he had filed a grievance against her. *Id.* ¶ 23. Defendant Tavernier told Green, "this is how I do things when you write me up, and I'm going to make it my job to get you." *Id.*

Green found his cell in shambles. *Id.* ¶ 24. His property was spread over the floor and

bunk and his mattress was in the corridor. *Id.* Green wrote Inmate Requests to several supervisory officers complaining about the strip search. *Id.* ¶ 25.

On August 19, 2018, Green reported to his hallway detail job. *Id.* ¶ 27. Defendant Tavernier pointed at Green and spoke aggressively with Officer Kalhotra, the officer who supervised Green's work assignment. *Id.* ¶¶ 28-29. In accordance with the recreation schedule for unit workers, Green went to the weight platform during evening recreation. *Id.* ¶ 31. Defendant Tavernier glared at Green during recreation for approximately 35 minutes. *Id.* ¶¶ 31-35.

As he was returning to his cell at the conclusion of the recreation period, Green was directed to Officer Kalhotra's desk. *Id.* ¶ 36. Officer Kalhotra told Green that defendant Tavernier had ordered him to issue Green an out of place disciplinary infraction. *Id.* ¶ 37. Officer Kalhotra stated that he disagreed with the charge but had to issue the report. *Id.* ¶¶ 37-38.

Green had been assigned to J-block because he needed a handicap-accessible shower. *Id.* ¶¶ 41-42. On August 20, 2018, Green was told that he was moving to D-block. *Id.* ¶ 30. He was issued a pass to go to D-block to get the moving cart. *Id.* ¶ 40. Captain Colon, the unit manager of D-block, told Green that he could not move to D-block because the showers were not handicap accessible. *Id.* ¶ 40. Captain Colon asked whether the unit manager in J-block was aware of the move. *Id.* ¶ 43. Green said that defendant Tavernier had arranged the move and related his history with defendant Tavernier. *Id.* ¶ 43-44. Captain Colon cancelled the move and directed Green to return to J-block. *Id.* ¶¶ 45-46.

Later that day, Green spoke with Captain Chapdelaine, the second shift commander,

about defendant Tavernier's actions. *Id.* ¶ 52. Captain Chapdelaine told Green that he was aware of the issues and stated that defendant Tavernier had ordered Officer Kalhotra to issue Green a negative performance evaluation. *Id.* ¶ 53. Captain Chapdelaine said he would speak to Captain Manning, the first shift commander, because defendant Tavernier was technically a first shift lieutenant. *Id.* ¶ 54. Captain Chapdelaine also stated that he would talk to defendant Tavernier, because he had spoken to Officer Kalhotra who had no complaints about the manner in which Green had fulfilled his hallway detail assignment. *Id.* ¶ 56. On August 28, 2018, the hearing officer deferred the disciplinary infraction on the out of place charge. *Id.* ¶ 55, 58. On September 7, 2018, Green spoke to shift commander Captain Manning, who informed Green that he had heard about the razor incident and was aware that there had never been a missing razor. *Id.* ¶ 59. Captain Manning also stated that he had received Green's requests but had not read them. *Id.* ¶ 60. Captain Manning told Green that he was aware that Green's disciplinary report had been deferred, and that Green had lost his job without doing anything wrong. *Id.* He also offered Green his hallway detail job back, which Green declined. *Id.*

## II.     **Standard of Review**

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against governmental actors and "dismiss . . . any portion of the complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)); *see also Allco*

5

*Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). Accordingly, a Complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that *pro se* pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (internal quotation marks and citation omitted); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."). Even in a *pro se* filing, however, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).

**III.	Discussion**

Green includes three counts in his complaint.  In the first count, Green alleges that defendant Tavernier retaliated against him because he made complaints against her.  In the second count, Green contends that defendant Tuggle subjected him to an unconstitutional strip search in violation of the Fourth Amendment because the search was conducted in a place where it could be viewed by female staff members.  He also alleges that defendant Tavernier ordered the search to be performed in this manner and also ordered an unreasonable search of the plaintiff's cell.  In the final count, Green contends that defendant Tavernier violated his Eighth Amendment right by denying him food for five days and attempting to transfer him to a housing unit where his disability would not be accommodated.

**A.	First Amendment**

Green alleges that Defendant Tavernier retaliated against him for filing a grievance against her.  To state a Section 1983 retaliation claim, plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action."  *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012).  Because retaliation claims are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts.  Conclusory allegations of retaliatory conduct are not sufficient.  *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Filing a grievance is a constitutionally protected activity and, therefore, can constitute the

7

required protected conduct to support a retaliation claim. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). Green alleges that when he accused defendant Tavernier of retaliation, she told him that this is how she reacts when inmates file grievances against her. Assuming the statement is accurate, as the Court must when reviewing a complaint, the statement confirms the retaliatory motive. The retaliation claim will proceed.

### B. Fourth Amendment

Green challenges both the strip search and the cell search as violating the Fourth Amendment. The Court first considers the strip search.

"A strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy." *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (citation and internal quotation marks omitted). *See also Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980) ("The privacy interest entitled to protection concerns the involuntary viewing of private parts of the body by members of the opposite sex."). However, "the strip search of a male inmate in view of a female correction officer does not, by itself, rise to the level of a constitutional violation." *Holland v. City of New York*, 197 F. Supp. 3d 529, 543 (S.D.N.Y. 2016) (citations omitted).

"[C]ourts in this Circuit have distinguished between 'regular' and 'close' viewing and 'incidental' and 'brief viewing of a naked prisoner,' with the latter being found constitutional." *Id.* at 543 (quoting *Little v. City of New York*, 2014 WL 4783006, at *2 (S.D.N.Y. Sept. 25, 2014), and collecting cases). For example, in *Correction Officers Benevolent Association v. Kralik*, No. 04 Civ. 2199, 2011 WL 1236135, at *11 (S.D.N.Y. Mar. 30, 2011), the court noted that "[m]ore recent cases in this Circuit and elsewhere addressing

8

inmates' right to privacy suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible, but that 'regular and close viewing' is prohibited." *See also Baker v. Welch*, No. 03 Civ. 2267, 2003 WL 22901051, at *20 (S.D.N.Y. Dec. 10, 2003) ("[T]he balance should be struck to allow incidental and obscured viewing but prohibit regular and close viewing."); *Miles v. Bell*, 621 F. Supp. 51, 67 (D. Conn. 1985) (explaining that the Second Circuit's opinion in *Forts v. Ward* "merely emphasizes that in order for inmates to show a violation of their privacy rights, they must show that the 'viewing' by guards of the opposite sex occurs on a regular basis" and distinguishing *Forts* from situations wherein "female guards ... only occasionally view[ ] male inmates undressed or using the shower and toilet facilities").

Green alleges that he was strip-searched by defendant Tuggle, a male officer. The search was conducted in the bathroom, albeit with the door open. Green alleges that two female nurses saw him naked while walking past the bathroom on the way to the treatment room. These allegations support only a brief, incidental viewing of Green's body, not a regular and close viewing. *Cf. Abrams v. Erfe*, 2018 WL 691714, at *10-11 (D. Conn. Feb. 2, 2018) (permitting Fourth Amendment search claim to proceed where inmate alleges that entire strip search was conducted in front of female correctional officer). Thus, Green fails to state a cognizable Fourth Amendment claim regarding the strip search.

The Court notes that the court in *Holland* stated that its holding did not "preclude the possibility . . . that a single search may also violate an inmate's right to privacy." 197 F. Supp. 3d at 543-44 (citing *Hayes v. Marriott*, 70 F.3d 1144, 1145, 1147 (10th Cir. 1995)). However, in *Hayes*, the single search was performed in the presence of over 100 people including female

9

staff. 70 F.3d at 1145. That is not the case here. Thus, the Court concludes that this one instance does not rise to the level of a plausible Fourth Amendment claim.

Green also challenges the search of his cell. The Supreme Court has held, however, that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Thus, Green's Fourth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). However, an improper cell search may be cognizable under the Eighth Amendment. *Shtilman v. Makram*, 2018 WL 3745670, at *4 (S.D.N.Y. Aug. 6, 2018) (citing *Hudson*, 468 U.S. at 530). Any Eighth Amendment claim is considered in the following section.

### C. Eighth Amendment

Green argues that defendant Tavernier violated his Eighth Amendment rights by denying him food for five days and trying to have him transferred to a different block without appropriate facilities for his handicap.

Prison conditions that are "restrictive or even harsh" do not violate the Eighth Amendment; these conditions are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not allow prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs … or the minimal civilized measure of life's necessities." *Id.*

To state a claim for deliberate indifference to health or safety as a result of unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a

subjective element. To establish the objective element, the inmate must allege facts showing that he was confined under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a life necessity or a substantial risk of serious harm to his health. Food, clothing, shelter, medical care, sanitation and personal safety are considered life necessities. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991). "The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). To establish the subjective element, the inmate must show that the prison official had culpable intent, *i.e.*, "'[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.'" *Id.* at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

Green first contends that defendant Tavernier denied him food for five days when she refused to permit him to enter the dining hall with his medically required pillow and did not arrange for him to receive his meals in his cell. Courts in this Circuit have held that the denial of meals for similar periods of time is cognizable under the Eighth Amendment. *See Beckford v. Portuondo*, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) (deprivation of two of three meals per day for eight days created an issue of material fact sufficient to survive summary judgment); *Moss v. Ward*, 450 F. Supp. 591, 596-97 (W.D.N.Y. 1978) (denial of food for four consecutive days and reduced food for three days thereafter sufficient to state Eighth Amendment claim). The Eighth Amendment claim against defendant Tavernier for denial of food will proceed.

Green also argues that defendant Tavernier violated his Eighth Amendment rights by trying to have him transferred to D-block. Although Green may have been denied his Eighth Amendment rights had the transfer been carried out, the transfer was cancelled. Thus, Green was

not denied the minimal civilized measure of life's necessities and cannot state a cognizable Eighth Amendment claim based on the transfer attempt. The Court will, however, consider the attempted transfer as one of the retaliatory acts under the First Amendment retaliation claim.

Finally, Green's cell search claim must be considered under the Eighth Amendment. An inmate can state an Eighth Amendment claim based on a cell search if he can show that the search "lacked any legitimate penological interest and was intended solely to harass." *Jones v. Harris*, 665 F. Supp. 2d 384, 395 (S.D.N.Y. 2009). The inmate must allege that "a defendant 'ordered the search[] with the specific intent to cause plaintiff harm and that the search[] in fact caused him harm.'" *Id.* Thus, the deprivation incurred must be sufficiently serious to satisfy the objective component of the deliberate indifference test, i.e., the search must have denied the plaintiff "the minimal civilized measure of life's necessities." *Id.*

Green cannot satisfy this standard. He alleges only that his belongings were scattered about the cell and his mattress was in the corridor. He does not allege that he suffered any harm from the search, only that he was annoyed or harassed. In addition, a single search generally is insufficient to demonstrate conduct that is "so much a departure from the norm as to be greater that a *de minimis* disruption." *Jones*, 665 F. Supp. 2d at 395; *see, e,g,, Mateo v. Bristow*, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (dismissing claim based on one search even where plaintiff met subjective component of Eighth Amendment test by alleging that the defendants made statement evincing their intent to harass and retaliate). As Green suffered no harm as a result of the search, he failed to meet the objective component of the Eighth Amendment test. Accordingly, any Eighth Amendment claim based on the search of his cell is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## IV. Conclusion

All Fourth Amendment claims and the Eighth Amendment claims relating to the cell search and attempted transfer are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). Accordingly, all claims against defendant Tuggle are dismissed.

The case will proceed on the First Amendment retaliation claims and the Eighth Amendment claim for denial of food against defendant Tavernier.

In accordance with the foregoing analysis, the Court enters the following orders:

(1) **The Clerk shall** verify the current work addresses for defendant Tavernier with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint to the defendant within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on her in individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** deliver a copy of this Order to the plaintiff.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendant shall file her response to the Amended Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If she chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claims recited above. She also may include all additional defenses permitted by the Federal

13

Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

It is **SO ORDERED**.

Dated: New Haven, Connecticut
      May 7, 2019

                                                  */s/ Charles S. Haight, Jr.*
                                                  Charles S. Haight, Jr.
                                                  Senior United States District Judge